UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ x
MARK ROBERTS,                                                :
                                                             :
                Plaintiff,                              :
                                                             :
      -against-                                             :
                                                             :    04 Civ. 10079(CSH)
NATHANIEL THOMAS KEITH,                                      :
ADMINISTRATOR OF THE ESTATE OF                               :
NORMAN THOMAS KEITH, a.k.a. TOMMY                            :
KEITH, MOE MOORE, SUGARHILL RECORDS                          :
LTD., SUGAR HILL MUSIC PUBLISHING, LTD.,:    MEMORANDUM OPINION
GAMBI MUSIC, INC., TWENTY NINE BLACK                         :        AND ORDER
MUSIC, SYLVIA ROBINSON, JOSEPH                               :
ROBINSON, JR., RHINO RECORDS,                                :
SANCTUARY RECORDS GROUP, LTD.,                               :
CASTLE MUSIC UK, and SEQUEL RECORDS,                         :
                                                             :
                Defendants.                             :
------------------------------------------------------------ x

HAIGHT, Senior District Judge:

       This is an action for copyright infringement under the Copyright Act, 17 U.S.C. §§ 101 *et seq.* Certain defendants move to dismiss the complaint pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the grounds that the claims are barred by the statute of limitations and that defendants are licensees of a co-owner. The moving defendants also ask for attorneys' fees pursuant to 17 U.S.C. §505.

## I. BACKGROUND

       Since this is a Rule 12(b)(6) motion to dismiss, the factual account that follows is based upon the allegations of the complaint.

       The case involves the recording and release of a musical composition, "Baby Let's Rap Now,

1

Dance a Little Later," (the "Released Work"), as well as the rights to two other, unreleased compositions, "Love Trap," and "The Woman That Got Away," (the "Unreleased Works"). The Released Work was released in 1980, and re-released as part of various compilation works in 1997, 1999, 2000, and 2001.

Plaintiff Mark Roberts contends that the Released Work is a recording of his original composition, "Baby Let's Talk Now, Dance Later" (the "Roberts Work"), and that his copyright in the Unreleased Works has been infringed by the moving defendants' improper attribution of authorship of the works in question to a deceased individual named Norman Thomas Keith ("Keith"). Defendant Nathaniel Thomas Keith is sued as the administrator of Keith's estate. Roberts, one-time aspiring songwriter, contends that he wrote the lyrics to the Roberts Work and the Unreleased Works (collectively, the "Works") from 1976 to 1977. Complaint ¶ 1. According to the Complaint, Roberts mailed the lyrics to the Works to Keith, an R&B producer, in January 1978. *Id*. ¶ 2. The Complaint alleges that Keith engaged plaintiff in a series of telephone conversations regarding the Works over a period of from early 1978 to the summer of 1979. *Id*. ¶¶ 3-9. According to Roberts, Keith informed him in February 1978 that he wanted to record the Works. *Id*. ¶¶ 3-9. In March 1978, Roberts was telephoned by Keith regarding the Roberts Work and was asked whether he had any conception of the melody for the song. Plaintiff responded by singing the Roberts Work to Keith by telephone. In a subsequent phone call, Keith played the Works to Roberts by telephone. *Id*. ¶ 4. Keith indicated that he would like the Moments, an R&B group for which Keith was the producer, to record the Works. *Id.* ¶ 3.

Notwithstanding these earlier expressions of interest and encouragement, by the spring of 1978 the Moments had switched record labels, and Keith informed Roberts that he would use the

2

Works with another musical group. *Id.* ¶ 6. Keith contacted Roberts again in the summer of 1978 to tell Roberts that he would use the Works on his solo album, to be released sometime in 1979. *Id.* ¶ 6. In early 1979 Keith informed Roberts that his record label had no interest in a Keith solo album. *Id.* ¶7. Later that year, Keith told Roberts that the record labels for which he worked, all owned by Defendants Sylvia and Joseph Robinson, were closing down. Keith stated that he would no longer have any need for the Works and that he would never publish the Works and that "Roberts could have his original lyrics back." *Id.* ¶ 8. Roberts did not hear from Keith again after 1979, and abandoned his musical pursuits in March 1983. *Id.* ¶ 13-14.

In the interim, according to the Complaint, Keith persuaded the musical group Ray Goodman and Brown to record and release the Roberts Work, as the Released Work, for Defendant Sugar Hill Records. *Id.* ¶ 11. The Released Work was subsequently compiled into a "box set" entitled "The Sugar Hill Records Story" and re-released in the United States by Defendant Rhino Records in February 1997 and July 1999. The Roberts Work was later released in the United Kingdom by Defendant Castle Music UK and Defendant Sequel Records in 2000, and by Defendant Sanctuary Music Group Ltd. in 2001. *Id.* ¶ 12.

Roberts had copyrighted his "original lyrics" to the Unreleased Works in 1987 and to the Roberts Work in 1998. Complaint ¶ 15. Roberts alleges he discovered on July 23, 2003 that the Roberts Work had been recorded and released. Roberts allegedly made the discovery by visiting the website BMI.com, a site providing access to songwriters' catalogues. On the site, the Works are listed as original works of Keith. *Id.* ¶ 17.

Defendant Robinson claims ownership of the publishing rights to the Released Work through Gambi Music, Sugar Hill Publishing Ltd.

3

Defendants Sugar Hill Records, Ltd., Sugar Hill Music Publishing, Ltd., Gambi Music, Inc., Twenty Nine Black Music, Sylvia Robinson, and Joseph Robinson, Jr. now move to dismiss the complaint on the grounds that the claim is barred by the statute of limitations and that they, hereinafter "the moving defendants," [1] cannot be held liable for copyright infringement as licensees of Keith, a co-author of the Released Work. Cinque Decl., ¶¶ 3-4.

## II. DISCUSSION

**A.  Standard of Review on a Motion to Dismiss Pursuant to Rule 12(b)(6)**

The district court should grant a Rule 12(b)(6) motion "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984) (citing *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)). On a motion to dismiss, a district court must accept a plaintiff's well-pleaded factual allegations as true, *Papasan v. Allain,* 478 U.S. 265, 283 (1986), and such factual allegations must be "construed favorably to the plaintiff," *LaBounty v. Adler,* 933 F.2d 121, 123 (2d Cir. 1991) (citations omitted). "The review of such a motion is limited, and the issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Recovery may appear remote and unlikely on the face of the pleading, but that is not the test for dismissal." *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir. 1996) (internal citations and quotation marks omitted).

**B.  <u>Statute of Limitations</u>**

**1.  Date of Accrual of Claim**

The Copyright Act states with deceptive simplicity that a civil copyright infringement claim

---

[1] Defendant Nathaniel Thomas Keith, sued as administrator of the estate of the late Norman Thomas Keith, has not joined in the present motion to dismiss.

4

must be brought "within three years after the claim accrued," 17 U.S.C. § 507(b), without bothering to define when a claim accrues. Conceptually there are two alternatives. An infringement claim may "accrue" at the time of the infringement (the "injury rule") or when the plaintiff knows or has reason to know of the injury upon which the claim is based (the "discovery rule"). Whether a copyright infringement action accrues as of the date of injury or as of the date of discovery is far from a settled question in the case law. Neither the Supreme Court nor the Second Circuit has ruled on the issue, and district courts within this Circuit are divided, with a majority of the earlier decisions holding that a copyright claim accrues on the date of its discovery by the plaintiff. *See Auscape Int'l v. Nat'l Geographic Soc'y*, No. 02 Civ. 6441, 2004 WL 1798130, at *4 (S.D.N.Y. Aug. 12, 2004) (and cases collected at note 34).

Judge Kaplan's thorough and lucid opinion in *Auscape* forcefully challenges those decisions by other district courts in this Circuit holding that civil copyright infringement claims accrue as of the date of discovery. *Ausscape* correctly observes that those cases "rely almost exclusively upon *Merchant v. Levy*, 92 F.3d 51 (2d Cir. 1996)," which in turn "followed *Stone v. Williams*, 970 F.2d 1043 (2d Cir. 1992), in applying a discovery rule to hold that plaintiffs' claims for a declaration of copyright co-ownership were barred by the statute of limitations." 2004 WL 1798130, at *4. While it may be questioned whether the date of accrual of a claim for co-ownership of copyright should be the same as that for an infringement claim, a question Judge Kaplan raises in *Auscape*, he correctly stated that in any event the Second Circuit's decisions in *Merchant* and *Stone* derived from cases in areas other than copyright "the general rule that accrual of a federal claim is governed by a discovery rule unless the statute upon which it is founded explicitly provides otherwise." *Id*. In other words, "*Merchant* and *Stone* rest entirely on then prevalent views regarding the accrual of federal claims

5

generally," *id*., and so do the district court decisions in this Circuit which, understandably enough, undertook to apply those Second Circuit cases in divining the date of accrual for a copyright infringement claim.

But *Merchant* and *Stone* can not be regarded as applicable to, let alone determinative of, the question of when a claim for copyright infringement accrues. That is because they antedate the Supreme Court's decision in *TRW v. Andrews*, 534 U.S. 19 (2001), which Judge Kaplan rightly said in *Auscape* "altered this landscape." 2004 WL 1798130, at *5. *TRW* shifted the tectonic plates because, in determining when a claim accrued under the Fair Credit Reporting Act, the Supreme Court "rejected the previously dominant view that federal courts should apply an injury rule only when Congress explicitly has adopted that rule, requiring instead that federal courts look beyond the specific language of a statute to its text and structure in determining what rule should apply when the statute is silent." *Id*.

In *Auscape* Judge Kaplan, correctly perceiving the generality of the rule the Supreme Court announced in *TRW* and that there was no principled difference in respect of the statute of limitations calculus between the Copyright Act and the federal statute involved in *TRW*, looked to the statutory structure and legislative history of the Copyright Act in determining whether a discovery or injury rule should apply in copyright infringement claims. His careful examination of the legislative history demonstrates in convincing fashion that "Congress intended to adopt a three-year limitations period running from the date of the infringement, as a discovery rule would have defeated its overriding goal of certainty." 2004 WL 1798130, at*7. After a similarly thorough review, Judge Kaplan concluded that "Supreme Court precedent concerning statutes of limitations in other contexts also supports the application of the injury rule here." *Id*., at *7. I find the analyses conducted and

6

conclusions reached in *Auscape* to be entirely persuasive, adopt them as my own in the case at bar, and accordingly hold that the injury rule governs the application of the three-year statute of limitations in this copyright infringement case.

Plaintiff's complaint was filed on December 21, 2004. Thus claims arising out of infringement prior to December 21, 2001 are time barred, unless the operation of the statute of limitations is tolled by some recognized principle of law, a question I consider in Part II.B.2., *infra*. However, quite apart from any tolling effect, any claims arising out of infringements within the three-year period preceding the filing of suit are actionable. "If such infringement occurred within three years prior to the filing, the action will not be barred even if prior infringements by the same party as to the same work are barred because they occurred more than three years previously." *Lennon v. Seaman*, 63 F.Supp.2d 428, 443 (S.D.N.Y. 1999) (*quoting* 3 *Nimmer* §12.05[A]). "Each act of infringement is a distinct harm giving rise to an independent claim for relief." *Stone v. Williams*, 970 F.2d 1043, 1049 (2d Cir. 1992).[2]

**2. Tolling**

Plaintiff argues that even if the statute of limitations runs from the date of an infringement, the fraudulent concealment by Keith of his infringing conduct tolled the statue of limitations until at least March 8, 2003.

---

[2] Plaintiff contends that his suit is timely if instituted within three years from the last act of infringement, quoting the Seventh Circuit's opinion in *Taylor v. Meirick*, 712 F.2d 1112, 1118 (7th Cir. 1983) that the statute of limitations does not begin to run on a continuing wrong until the wrong is over. This "continuous wrong" doctrine has been rejected by the Second Circuit, which explained in *Stone v. Williams* that, "This does not mean that when infringements occur during the limitations period recovery may be had for past infringements. Recovery is allowed only for those acts occurring within three years of suit and is disallowed for earlier infringing acts." *Stone v. Williams*, 970 F.2d at 1049-50.

7

"[T]he law is clear that fraudulent concealment of the existence of a cause of action tolls the running of the statute of limitations." *Stone v. Williams*, 970 F.2d 1043, 1048-49 (2d Cir. 1992). Tolling lasts for as long as the fraud is effective. *Id*. In order to rely upon the doctrine of fraudulent concealment, the plaintiff must plead three elements: (1) wrongful concealment by defendants, (2) which prevented plaintiff's discovery of the nature of the claim within the limitations period, and (3) due diligence in pursuing discovery of the claim. *In re Merrill Lynch Ltd. Partnerships Litig.*, 154 F.3d 56, 60 (2d Cir. 1998); *Antonios A. Alevizopoulos & Assocs. v. Comcast Int'l Holdings, Inc.*, 100 F.Supp. 2d 178, 184 (S.D.N.Y. 2000). A complaint must satisfy the particularity requirement of Fed. R. Civ. P. 9(b) with respect to these elements. *Id.* To do so, the complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements. *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989). Furthermore, the complaint must "allege facts which give rise to a strong inference that the defendants possessed the requisite fraudulent intent." *Alevizopoulos*, 100 F.Supp. 2d at 184 (quoting *Cosmas*, 886 F.2d at 11).

The Court's Rule 12(b)(6) analysis is confined to the legal sufficiency of the factual allegations of Roberts' complaint. Those allegations satisfy the elements of pleading fraud as far as the conduct of the late Norman Thomas Keith is concerned. The complaint alleges particularized facts which specify that Keith contacted Roberts in early 1979 for the purpose of informing Roberts that defendants would have no need for his lyrics, that Keith would not publish or use the Works, and that Roberts could have the Works back. Compl. ¶ 8. On these facts, Keith's production of the Released Work a mere one year later gives rise to a strong inference that Keith possessed fraudulent

8

intent. Keith allegedly produced the Roberts Work with minor alterations one year after informing Roberts that he would not publish any of the Works, and never contacted Roberts again. Compl. ¶¶ 11, 13. Upon discovering the fraud on March 8, 2003, plaintiff proceeded to pursue his claim in earnest, contacting defendants within two months of discovery and filing the complaint within twenty-two months of the date of discovery. There are no facts presented at this stage to indicate that plaintiff should have uncovered Keith's alleged fraud earlier.

On the present record, therefore, I deny the moving defendants' motion to dismiss any of plaintiff's copyright infringement claims on the ground that they are barred by the statute of limitations.[3]

## C. Co-Authorship

Defendants' second ground for dismissal has no merit. Defendants claim that they are undisputed licensees of a co-author, namely Keith. But they fail to cite to any paragraph in the complaint that would support this contention. Construed in the light most favorable to the plaintiff, the complaint asserts sole authorship. The complaint pleads facts giving rise to an inference that plaintiff is the author of both the lyrics and melody of the Released Work. Compl. ¶ 4. Thus there exists an issue of fact as to whether or not the moving defendants hold a valid license to publish from a co-author.

## III. CONCLUSION

For the foregoing reasons, the moving defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6) is denied. Accordingly, their related request for attorneys' fees pursuant to 17

---

[3] That denial is without prejudice to defendants' revisiting the question of the statute of limitations after discovery has been completed.

U.S.C.A. §505 is also denied.

Counsel for the parties are directed to conduct the conference mandated by Fed. R. Civ. P. 26(f) and to submit to the Court the proposed discovery plan. The plan must be submitted to the Court not later than April 3, 2006. The Court will then consider the entry of a scheduling order pursuant to Rule 16(b).

It is SO ORDERED.

Dated: New York, New York
March 3, 2006

_____
CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE