```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------- x
MARK ROBERTS,                                   :
                                                :
                        Plaintiff,              :
                                                :
        -against-                               :
                                                :           04 Civ. 10079 (CSH)
                                                :
NATHANIEL THOMAS KEITH,                         :
ADMINISTRATOR OF THE ESTATE OF                  :           MEMORANDUM OPINION
NORMAN THOMAS KEITH, a.k.a. TOMMY               :                AND ORDER
KEITH, MOE MOORE, SUGARHILL RECORDS             :
LTD., SUGAR HILL MUSIC PUBLISHING, LTD.,        :
GAMBI MUSIC, INC., TWENTY NINE BLACK            :
MUSIC, SYLVIA ROBINSON, JOSEPH                  :
ROBINSON, JR., RHINO RECORDS,                   :
SANCTUARY RECORDS GROUP, LTD.,                  :
CASTLE MUSIC UK, and SEQUEL RECORDS,            :
                                                :
                        Defendants.             :
---------------------------------------------------------------- x
```

HAIGHT, Senior District Judge:

On November 9, 2006, this Court granted plaintiff's application for the entry of a default judgment against defendant Nathaniel Thomas Keith in this copyright infringement action. The Court at that time also referred the case to Magistrate Judge Maas for an inquest as to the damages owed by Keith. In March of 2007, before an inquest had been conducted, Keith filed two submissions in which he sought to dismiss the action due to a lack of venue and the tolling of the statute of limitations on plaintiff's claim. These being the first submissions filed by Keith in the action, the Court had previously been unaware that he was proceeding *pro se*.

In an Order dated March 23, 2007, noting the liberal construction with which courts are to treat pleadings and motions by *pro se* litigants, I construed Keith's submissions as a motion made

pursuant to Fed. R. Civ. P. 55(c) to vacate an entry of default for "good cause" shown.[1]  In that Order I stayed the inquest before Judge Maas, directed plaintiff to respond to defendant's Rule 55(c) motion, and gave defendant the opportunity to reply to that response.  The parties having complied, this issue is ripe for decision.

For the reasons stated below, the Court grants defendant's motion to vacate the entry of default judgment against him.

## I.  BACKGROUND

Defendant Keith is the administrator of the estate of his father, the late Norman Thomas Keith, who is one of the persons charged with having infringed plaintiff's copyright in certain of plaintiff's works.  The factual background in this case is described in an Opinion and Order of the Court reported at 2006 WL 547252 (S.D.N.Y. Mar. 7, 2006) ("*Roberts I*"), familiarity with which is assumed.

On December 22, 2004, a summons and complaint were served on Keith at his place of residence in Philadelphia, Pennsylvania.  On January 17, 2005, many of the defendants collectively filed a motion to dismiss the complaint.  Keith was not among their number.  That motion was denied in *Roberts I*.

On September 19, 2006, plaintiff filed a motion to obtain a default judgment against Keith.[2]  On November 9, 2006, having received no response from Keith, the Court granted plaintiff's application.  The Court at that time also referred the case to Magistrate Judge Maas for an inquest into the damages owed by Keith.

---

[1] Part II.A., *infra*, explains why Rule 55(c) applies, even though a default judgment, as opposed to an entry of default, had been obtained against Keith.

[2] Plaintiff has provided proof of service upon Keith of those papers.

On December 1, 2006, Judge Maas issued an order requesting submissions from both parties pertaining to the inquest. He required plaintiff to respond by February 2, 2007 and Keith to respond by February 16, 2007.

On March 6, 2007, Keith attempted to file a motion to dismiss, which was referred to Judge Maas. Judge Maas issued an order explaining to reminding Keith that he was only presiding over the inquest, and giving Keith an extension until April 13, 2007 to file opposition papers concerning the appropriate amount of damages.

On March 13, 2007, Keith filed another "notice of motion" which was directed to this Court by the *pro se* office. On March 23, 2007, I issued an order construing Keith's submissions as a motion pursuant to Rule 55(c) and staying the pending inquest before Judge Maas. I also requested that plaintiff respond to Keith's motion. Plaintiff timely responded on April 23, 2007, and Keith submitted a reply dated May 4, 2007 by the *pro se* office.

## II.  DISCUSSION

**A.    Standard of Review**

Rule 55(c) provides: "For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)." Fed. R. Civ. P. 55(c). While the standard for setting aside an entry of default under Rule 55(c) is less rigorous than that for setting aside a default judgment pursuant to Rule 60(b), courts use the same set of factors for both. *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 96 (2d Cir. 1993). These factors are: (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented. *Id*. The Second Circuit has also indicated that "other relevant equitable factors may also be considered," such as "whether the failure

to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.*

Default procedures are a useful mechanism for ensuring the orderly administration of justice, particularly when a litigant is confronted with an obstructionist adversary, but this value must be balanced against the strong preference expressed in this Circuit for deciding disputes on the merits. *See Pecarsky v. Galaxiworld.com Ltd.*, 249 F.3d 167, 174 (2d Cir. 2001) ("It is well established that default judgments are disfavored. A clear preference exists for cases to be adjudicated on the merits."). *See also Enron*, 10 F.3d at 96 ("[D]efaults are generally disfavored and are reserved for rare occasions. . . ."). Thus doubts must ordinarily be resolved in favor of the defaulting party. *Enron*, 10 F.3d at 96.

When the party against whom the default or default judgment is entered is a *pro se* litigant, an additional consideration is at play, namely, a concern about the ability of *pro se* litigants to protect their rights. *See Enron*, 10 F.3d at 96. Default is a harsh resolution to a case, *see BBC Enters. Ltd. v. Gold Coast Tape Distrib., Inc.*, No. 88 Civ. 7786, 1992 WL 276562, at *2 (S.D.N.Y. Sept. 29, 1992) (default judgment is an "extreme sanction"), and courts must endeavor to ensure that the underlying circumstances genuinely warrant a default, as opposed to being the consequence of a simple lack of legal knowledge on the part of a *pro se* litigant. Thus, as a general matter, "a district court should grant a default judgment sparingly and grant leave to set aside the entry of default freely when the defaulting party is appearing *pro se*." *Enron*, 10 F.3d at 96. Such decision is rendered by the court in the exercise of its sound discretion. *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998).

In this case, plaintiff obtained a default judgment against Keith. Ordinarily Rule 60(b)

governs a motion to vacate a default judgment (as opposed to the entry of default). However, when a case is referred for an inquest as to damages, the more lenient "good cause" standard of Rule 55 applies; this is because Rule 60(b) by its terms only applies to "final" judgments, and a default judgment in such an instance is not a final judgment. *See Globe Indemn. Co. v. J.T. Falk & Co., Inc.*, No. 01 Civ. 0271, 1992 WL 116630, at *2-*3 (S.D.N.Y. Mar. 15, 1992). That was the posture of this case, and thus Rule 55(c) applies. As defendant Keith is a *pro se* litigant, the Court considers the three "good cause" factors and any additional equitable considerations with his *pro se* status in mind.

B.  Analysis of the "Good Cause" Factors

    **1. Willfulness**

The Second Circuit has held that willfulness, in the context of a default, requires "conduct that is more than merely negligent or careless," *McNulty*, 137 F.3d at 738, "such as egregious or deliberate conduct," *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005), or conduct that was "egregious and was not satisfactorily explained," *McNulty*, 137 F.3d at 738. "[T]he degree of negligence . . . is a relevant factor to be considered," yet even gross negligence "does not necessarily preclude relief." *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996). *See also BBC Enterprises*, 1992 WL 276562, at *2 (default judgment "must remain a weapon of last, rather than first, resort, which should only be imposed upon a serious showing of willful default") (internal quotations and citations omitted). *Compare Enron*, 10 F.3d at 97 (failure to answer second amended complaint not willful where *pro se* defendant, who had timely answered prior complaint and opposed motion for default, claimed he did not receive second amended complaint), *and King Vision Pay Per View v. Esposito*, No. 01 Civ. 9781, 2002 WL 31413806, at *1 (S.D.N.Y. Oct. 24,

2002) (no willfulness where *pro se* defendant misunderstood court's instruction that he need not appear at oral argument to mean that he was not required to oppose default judgment on paper either), *with McNulty*, 137 F.3d at 739 (willfulness found where defendant had received SEC complaint and could not credibly deny receipt of follow-up warning letters from SEC due to documentation of response by him, and where defendant offered no explanation of his failure to respond to complaint), *and Todtman, Nachamie, Spizz & Johns, P.C. v. Ashraf*, 241 F.R.D. 451, 454-55 (S.D.N.Y. 2007) (willfulness found where defendant, though *pro se*, had contacted an attorney about representing him and waited seven months to respond to the summons and complaint without satisfactory explanation).

In this case, Keith acknowledges receipt of the complaint. He states in his reply papers on this motion, "When I was served papers in 2003, I knew nothing about court procedure. . . . I mailed the whole package to Mrs. Robinson." Def.'s Reply, at 1. Sylvia Robinson and her son Joseph Robinson, who allegedly owned the record labels for which Keith's father Norman Thomas Keith worked, are co-defendants. Keith then maintains, "When I called Mrs. Robinson at her home, I was told by her, not to worry because the statute of limitations has past [*sic*]10 years ago and she would have her son, Joey, to take care of it. With this information and my trusting in the law, being a law abiding citizen myself, I thought this was all over." *Id.* He later states, "I swear by all that is holy, I was told by Mrs. Robinson that this suit was past the limitation laws and she would have her son, Joey, take care of it. I would never let something this important go unsolved. I was never informed to my knowledge that I was considered in default until now. I had the understanding everything was settled." *Id.*

In sum, Keith's position is that when he received the complaint, he forwarded it to Sylvia

Robinson and had a conversation with her in which she told him that the statute of limitations had passed and that her son would "take care of" the case. It appears, then, that Keith believed Sylvia Robinson through her son would act on his behalf and that any resolution she achieved in her favor in the case, such as obtaining dismissal due to the expiration of the statute of limitations, would extend to Keith as well. I find it reasonable for Keith to believe that any success achieved in the case by Sylvia Robinson, who is represented by counsel, would extend to him. A person unfamiliar with the law might not know that a decision to dismiss claims with respect to one defendant does not automatically apply to another defendant, even if the reason is not particular to the defendant as to whom the claims were dismissed. This is precisely the type of legal knowledge that a *pro se* litigant might not have. Of course Keith was on notice after receiving the complaint and summons that he had an obligation to assert his rights, but his additional understanding that Sylvia and Joseph Robinson would act on his behalf justifies non-response up to the point where this understanding was no longer tenable. The point when Keith's sanguine assumptions must have been deflated is the time, whenever it was, that he learned of the default judgment against him.

An examination of dates is important in determining when Keith possessed this knowledge. Default judgment against Keith was entered on November 13, 2006, but Keith claims that he did not learn of it, and there is no evidence in the record indicating that the Court's Order was sent to him by mail.[3] Magistrate Judge Maas signed a scheduling order on December 1, 2006 in which he

---

[3] Since the case was designated an ECF case, and Court did not know at that time that Keith was representing himself *pro se*, it is possible that he did not receive a hard copy of the judgment against him. In the absence of proof that the judgement was mailed to him, I credit Keith's representation that he did not learn of the default judgment prior to the order he received from Judge Maas. I also note here a mischaracterization by plaintiff of defendant's statements on this point. Plaintiff states in his brief on this motion that defendant "admits to receiving every single correspondence in this action, including the motion for default judgment, and this Court's ruling of November 9, 2006, granting default judgment in 'favor of plaintiff and against

requested both parties to submit inquest memoranda. Judge Maas's order indicates that it was sent to Keith at the same address where Keith resided at the inception of this case, and where he continues to reside. Thus defendant was on notice at least as of his receipt of the December 1, 2006 order that a default judgment had been obtained against him and that a procedure had been set in motion which would require him to pay damages. Defendant knew that he was required to submit a memorandum on or before February 16, 2007. In the meantime, plaintiff submitted an inquest memorandum to Judge Maas on February 6, 2007, providing proof of service on Keith. On March 6, 2007, the docket entry notes receipt of a "motion to dismiss," sent to Judge Maas. Judge Maas then issued an order stating that he was unable to consider a motion to dismiss as he was only presiding over the case for the purpose of an inquest. He extended the time limit for Keith to submit his inquest materials until April 13, 2007.

While it would have been preferable for Keith to submit his motion immediately upon receipt of Judge Maas's December 1, 2006 order, it is not reprehensible or unreasonable for Keith to have taken the time period granted to him by Judge Maas to respond. Thus his unexcused delay was the two and a half weeks between the expiration of the February 16, 2007 deadline and the date by which he sent his submissions to Judge Maas. This amount of delay does not meet the egregiousness standard, particularly since Keith is a *pro se* litigant. That Judge Maas responded to Keith's late papers by granting him an extension until April 13, 2007 provides further support that Keith's delay was not egregious. Additionally, once granted that extension, Keith asserted his rights in this Court

---

defendant Nathaniel Thomas Keith. . . .'" Pl.'s Mem. in Opp'n, at 2. For this proposition, plaintiff cites an Exhibit 1 to a Declaration by counsel for plaintiff. Exhibit 1, however, is a copy of the default judgment itself, which merely supports the quotation from the default judgment, and not the proposition that Keith *admits receipt* of it, much less admits receipt of "every single correspondence in this action." There is no support in the record for that proposition. Indeed, as quoted *supra*, Keith explicitly denies having received the default judgment.

well within the time frame given to him by Judge Maas.

I conclude that while in hindsight it appears that Keith should not have relied upon defendant Sylvia Robinson's representation that her son would sort out the situation, I cannot say that reliance was unreasonable in the circumstances, and it adequately excuses Keith's failure to responds to the summons and complaint. When Keith learned that an inquest was to be held concerning the damages he owed due to his default, he did respond without undue delay. Under these circumstances, I do not find that Keith's conduct was "willful." He is therefore not precluded from a vacation of the default judgment for that reason.

### 2. Prejudice to Adversary

Plaintiff asserts that he will endure "substantial prejudice" if defendant is permitted to set aside the default judgment because "[d]efendant continues to exhibit Mr. Roberts' Works as those of Norman Thomas Keith." Pl.'s Mem. in Opp'n, at 8. However, plaintiff does not demonstrate *prejudice,* only inconvenience and aggravation. "Prejudice" in this context means the loss of evidence, increased difficulties of discovery, or greater opportunity for fraud and collusion – circumstances that make it more difficult for plaintiff to prosecute its case. *See Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). The delay occasioned by a court's vacation of the default judgment "alone is not a sufficient basis for establishing prejudice." *Id*.

Here, I conclude that plaintiff will suffer no prejudice by vacating the default judgment against Keith. Indeed, given that plaintiff filed this copyright action over two decades after the alleged copying took place, and long after the primary alleged wrongdoer had died, it would be difficult to imagine how a few months' delay could cause any further loss in evidence or otherwise impede discovery.

While the absence of prejudice to an adversary is not alone a sufficient ground for vacating a default, *see McNulty*, 137 F.3d at 738, here it bolsters defendant's motion to vacate the default judgment.

### 3. Presentation of Meritorious Defense

With regard to this third factor, the Second Circuit has held that test of whether a meritorious defense is presented is "measured not by whether there is a likelihood that it will carry the day," but whether the stated defense would "if proven at trial constitute a complete defense." *Enron*, 10 F.3d at 98.[4] *See also Shanshia Touring, Inc. v. Ferguson*, No. 04 Civ. 3388, 2005 WL 475565, at *3 (S.D.N.Y. Feb. 25, 2005) (Rule 55 "potentially meritorious defense" prong satisfied where plaintiff "may have several viable defenses," among them "a possible jurisdictional deficiency"); *Esposito*, 2002 WL 31413806, at *1 (*pro se* defendant presented potentially meritorious defenses when arguing that he did not own the club where alleged cable piracy took place, and that in any event the owner used a different cable services). This can be a critical factor because, without the prospect of a valid defense, there is little point in setting aside the default judgment. *See Brown v. Gabbidon*,

---

[4] Plaintiff argues that Keith's objection to venue would not constitute a "complete defense" within the meaning of Rule 55 analysis because it would only require plaintiff to re-file the action in another venue. *See* Pl.'s Mem. in Opp'n, at 7. I am not inclined to agree. A meritorious defense is one that would "completely bar plaintiff's recovery." *Srein v. Silverman*, No. 00 Civ. 1479, 2001 WL 366620, at *3 (E.D. Pa. Apr. 11, 2001). A lack of personal jurisdiction, which is part of the venue analysis (see analysis *infra*), would completely bar plaintiff's recovery in this Court. This defense has been held to be a complete defense within the meaning of the "meritorious defense" analysis. *See Standard Enters, Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 40 (S.D.N.Y. 1987) (defendant's "defense is that this court lacks *in personam* jurisdiction over it, which, if true, would constitute a complete defense"). Moreover, even if it were not a complete defense for Rule 55 purposes, this Court may take up Keith's objection to venue here and separately assess whether the Court has personal jurisdiction over him. *See, e.g.*, *Croskey v. Med. & Tech. Servs., Inc.*, No. 05 Civ. 6641, 2006 WL 2347816, at *1 (considering together both defendant's motion to vacate default judgment and motion to dismiss action for lack of personal jurisdiction).

No 06 Civ. 8148, 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) (declining to set aside default judgment, largely because defendant presented no meritorious defense).

Here, defendant has raised a meritorious defense. In his "motion to dismiss," which this Court has construed as a motion made pursuant to Rule 55, Keith states two defenses, the first being that the statute of limitations has run on plaintiff's action, and the second being that the Court "lacks venue for this action." Def.'s Mot., dated Mar. 6, 2007, at 1. The first defense has no merit, as this Court already definitively decided that question in the plaintiff's favor in *Roberts I*. However, the Court has not previously examined Keith's venue objection, and I find – without passing on the merits – that he has raised the possibility of a meritorious defense.[5]

Plaintiff maintains that venue is proper pursuant to 28 U.S.C. § 1391 and 28 U.S.C. § 1400(a). *See* Compl. ¶ 43. The first is a general venue provision; the second is the venue provision particular to copyright cases. § 1400(a) provides that venue in actions "arising under any Act of Congress relating to copyrights . . . may be instituted in the district in which the defendant or his agent resides or may be found." It is accepted that a defendant "may be found" in any district possessing jurisdiction over his person. *See Haaretz Daily Newspapers, Ltd. v. Maariv Modiin Pub. Co., Ltd.*, 98 Civ. 2878, 1999 WL 796163, at *2 (S.D.N.Y. 1999). Because venue is coextensive with personal jurisdiction, a defendant whose contacts in this district satisfy New York's long-arm statute is therefore "found" here for venue purposes. *Id.* I note, however, that to satisfy § 1400(a),

---

[5] While the defenses of lack of venue or personal jurisdiction are waived if not made in defendant's "first defensive move," generally an answer to the complaint or a motion to dismiss, Keith has not previously made any defensive move, and therefore he has not waived his right to assert lack of venue as a defense. *See Novak v. Petsforum Group*, Inc., No. 02 Civ. 2978, 2005 WL 1861778, at *1 (E.D.N.Y. Aug. 1, 2005) (defendant did not waive personal jurisdiction defense when raised for the first time in motion to dismiss filed subsequent to its successful defense of plaintiff's motion for a default judgment).

the jurisdictional contacts relied on for venue purposes must be specific to the district, not merely the state in which the district court sits. *Id.* The question, then, is whether Keith is amenable to personal jurisdiction in this district.

Plaintiff designates both Keith and Moe Moore as the "Copying Defendants," *see* Compl. introd. ¶,[6] and states that "[u]pon information and belief, the Copying Defendants were or are songwriters under a publishing contract with the Publishing Defendants, who copied Mr. Roberts' Work *Baby Let's Talk Now, Dance Later*, while employed by Ms. Robinson at Sugarhill Records in Englewood, New Jersey." Compl. ¶ 20. Then the complaint maintains, "This Court has jurisdiction over the Copying Defendants pursuant to New York CPLR § 302, in that defendants' infringing acts committed in New Jersey caused injury to Mr. Roberts who resides in New York, and that both defendants intended to profit from those infringing acts by introducing the copied Works into the stream of interstate commerce." Compl. ¶ 39.

By invoking § 302, plaintiff properly references the relevant section of New York's long-arm jurisdictional statute, which provides that a court may exercise personal jurisdiction over any non-domiciliary or his executor or administrator who in person or through his agent:

1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or

2. commits a tortious act within the state. . . ; or

3. commits a tortious act without the state causing injury to person or property within the state, except as to a cause of action for defamation of character arising from the act, if he

   (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

---

[6] Moe Moore is not elsewhere mentioned by name in the complaint.

>   (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

CPLR § 302(A)(3). While plaintiff's "stream of commerce" analysis may be relevant to a determination of whether exercising personal jurisdiction over the defendant comports with federal due process, it is New York law with which we are preliminarily concerned, and § 302 says nothing about introducing works into a stream of interstate commerce. Keith is not subject to personal jurisdiction in this district unless he meets one of the prongs cited above. I am not presently convinced that he does.

Keith has not presented evidence or articulated an argument in support of his contention that venue in this district does not exist. Since, however, the Second Circuit has said that "trial judges must make some effort to protect a party so appearing [without the aid of counsel] from waiving a right to be heard because of his or her lack of legal knowledge," *Enron*, 10 F.3d at 96, and district courts should construe *pro se* submissions "to raise the strongest arguments that they suggest," *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (internal quotation marks and citation omitted), I hold that for the purpose of this Rule 55(c) motion, Keith has sufficiently raised the prospect of a meritorious defense on the question of venue.

### III. CONCLUSION

I grant Keith's motion pursuant to Rule 55(c) to vacate the entry of default judgment against him. His conduct was not willful, vacating the default will not prejudice plaintiff, and Keith has raised a potentially meritorious defense. Under such circumstances, maintenance of default against Keith due to his failure to follow the Court's procedures would bring about the type of "harsh or unfair" result that the Second Circuit has cautioned district courts to avoid.

Accordingly, the default judgment against defendant Keith is vacated.

As an inquest to damages is no longer appropriate at this time, the Court also vacates the order of reference to Magistrate Judge Maas.

I hereby further direct plaintiff to respond to defendant Keith's argument that this Court is not a proper venue for the action against him. Plaintiff must submit a response to the Court no later than October 5, 2007. Keith may have until October 19, 2007 to file a reply to plaintiff's response. Keith need not respond, but if he chooses to, he must provide proof of service upon plaintiff, and he must also submit any factual statements in the form of statements sworn to before a notary public.

It is SO ORDERED.

Dated: New York, New York
       September 18, 2007

CHARLES S. HAIGHT, JR.
SENIOR UNITED STATES DISTRICT JUDGE